Okay, the next case that we're calling is Decker v. Union Pacific Railroad Company. Mr. Harlan, Mr. Gavin. Good afternoon, Ms. Cox. Good afternoon. May it please the Court, Counsel, I am Harlan Harlan. I'm representing Union Pacific Railroad Company. We are here today because of the denial of a quorum non-convenience motion that we filed in St. Clair County. This case originated in Marion County. It was filed May 8th of 2013. It concerns, and I'll use counsel's own words, a simple slip and fall. Mr. Decker was a locomotive engineer. He went to work on May 8th, 2013, at the Salem yard. He went out to a locomotive, and he was going to put up air hose in the rear compartment of that locomotive. When he opened doors on the locomotive and stepped in that compartment, he slipped on oil that was in the floor of that compartment. He filed the complaint. It was on May 8th of 2013. The action happened July 23rd of 2012. We agreed to a case management order that was entered in January of 2014 where we set discovery schedules for disclosures of 213 witnesses. The plaintiff's disclosure date was March 31, 2014, and the trial was set for March 2nd of 2015. The plaintiff answered the Rule 213 disclosures for trial witnesses, and he named certain witnesses at that time. The two crew members were named. The two doctors that were named, one in Marion County, one in Jason County, actually, right here in Mount Vernon. Another witness in Salem, or since I think it was in Clinton County. And there was one witness in St. Clair County, Mr. Elliott. Mr. Elliott performed an inspection on that locomotive the day that this incident happened. In fact, it was the morning of July 23, 2013. Did you say that was originally disclosed in the first set of 213 answers? Yes. There was one witness, Mr. Elliott. And discovery proceeded. In 2013, we produced Mr. Elliott's inspection report, which indicated that he found oil film on the locomotive floor, and he applied oil dry to it. We also produced photographs of the oil on the floor that he took, and the photographs that were taken by the plaintiff's representative, Mr. Crawford, that showed the white oil dry. And the reason I'm going over these facts is because these were the witnesses that discovery showed in the Marion County case. And we named our witnesses, and actually, I filed a motion for a continuance, because we couldn't get the plaintiff's deposition because of the winter weather in January 2014. And at that time, Mr. Gavin, plaintiff's counsel, indicated he objected to the continuance. He said it was a simple slip and fall case. Discovery had been completed as far as the fact witnesses and the experts, and he objected to the continuance. I got one month, and my motion for continuance, to April of 2015. From January to April was one month? The case was set March 2nd of 2015 for trial. I got one month. I got a continuance to April of 2015. Oh, you asked for a trial continuance? Yes. Oh, okay. I thought you were asking for witness continuance. No, for a trial. And that's when the plaintiff's counsel objected to it. And I got one month. So, at that hearing, though, it was represented that it was July 24th, 2014. He said it was ready for trial. Discovery contemplated and the scheduling order had been completed, and this was a simple slip and fall case. One month later, there was a motion to voluntarily dismiss. And that was filed August 28th of 2014. There was a hearing on that motion, September 22nd, 2014. And this is part of the record. And at that hearing, Mr. Gavin said, The defendant refers to the case management order, which required plaintiffs to disclose their witnesses on March 31, which we did so. So we complied with the discovery order. We disclosed the fact witnesses and treating physicians in this case. That was September 22, 2014. At that time, the plaintiff had not disclosed these new witnesses that I'll get to when the case got refiled in St. Clair County. And those witnesses have nothing to do in this case other than to try and manufacture a form for St. Clair County. The Marion County Court dismissed this case on December 12, 2014, pursuant to that motion. That's my understanding you filed a motion for sanctions at that time? I filed a motion for costs in the Marion County case. Costs. Sanctions costs. And I think you wanted the judge to find that there was ill motive in wanting to dismiss this case. Noncompliance with your offer. But the judge made a finding that you were not entitled to your costs and that there was no noncompliance. I mean, there's a specific finding that was made by the court in that regard. Is that true? That is correct, Your Honor. And the reason why was there was no reference by plaintiff's counsel that he was going to refile this case in St. Clair County. Even though all the witnesses had been named and the case was refiled in St. Clair County, now we have these new witnesses. That wasn't disclosed in that hearing. In fact, just the opposite. That's what I'm reading was the representation that all the witnesses, plaintiff's witnesses, the fact witnesses were disclosed. That's what was said to that judge. And that's your finding. I agree. Now, when we get to St. Clair County, that's filed December 17 of 2014. And lo and behold, immediately a motion for partial summary judgment is filed on the Locomotive Inspection Act, which was never filed in Marion County. And a case management order and a trial setting order is also filed. A request. Yes. Now, let's talk about these new witnesses. Was a case management order entered? No, because we filed our FNC motion. Okay. Which was denied in a one-sentence order, no explanation. So, at the time the order was entered for the firm non-convenience motion, no case management order had been set or a trial date. That is correct. Okay. Now, these are the new witnesses. So, how did the new witnesses get disclosed? Mr. Gale named them. He just voluntarily named them? In his response to our motion. Which motion? The FNC motion. Okay. So, this is not a 213 disclosure, this is just a response to your firm non-convenience? Yes. I see. Okay. And these are the witnesses to support the case being in St. Clair County. Okay. Which were not disclosed in Marion County. Well, he got these names from Discovery you provided. And he had? I mean, the names weren't just picked out of a phone book. I mean, you had, in your answer to Discovery, noted that certain railroad employees had made certain computer notations or whatever, and that's where the names came from. The names came from documents that were produced in 2013. Right, I understand that, during the Marion County case. Yes. Right. But, these people turned out, I mean, Plano says that these people made inspections of the Slope Motor shortly before and after the July 23, 2012 slip of the tongue. And, in our response, we got affidavits from these people that said, I didn't make any inspection of that locomotive. One person, Jeremy Smith, works in Omaha, Nebraska, and he said he made a computer entry in what is called a shopping history, which shows what's done to this locomotive. And, in his affidavit, he said, I didn't make any inspection on this thing. And, that was, I think, his entry was July 31, 2012. Supposedly, this shortly after inspection in D'Youville, Illinois. His affidavit specifically says, I did not perform any inspection on this locomotive on July 31, 2012 in D'Youville, Illinois. But, he's not the basis for all of the claims that this case should be in St. Clair County. I mean, there are other railroad witnesses, one of whom lives in Belleville, I think, who works in St. Louis. There's another employee that works in St. Louis. You sent the plaintiff to a St. Louis physician, expert doctor. I don't believe so, Your Honor. The railroad did not send the plaintiff to a doctor? We sent him for an IME, our office did, not the railroad. Was that doctor in St. Louis? Yes, he was. And, the engine was produced for inspection by the plaintiff in St. Clair County? In East St. Louis. In East St. Louis. So, if a jury wanted to look at the train, where would it be produced, East St. Louis? It would be produced in the Salem yard on the track where this incident happened. Then, why wasn't it produced there when asked for by the plaintiff? Well, if I knew, Judge, if I knew that the plaintiff was going to file a suit in Marion County and work the case out, get a scheduling order, and dismiss it and refile it in St. Clair County, I would have produced it in Salem. Well, what is our issue here, though? Is it the motive of the plaintiff? Is that what we're to look at in deciding this case, or do we look at the doctrinal form, nonconvenience, and the various factors set out in Langenhorst and the other cases? Obviously, the latter. We go by the law. So, that's why I'm wondering why we're talking about, well, he did this in Marion County and then he did this in St. Clair. Aren't we bound, as the court of review, to look at what happened in St. Clair County and whether or not what's going on in St. Clair County merits a transfer? Are we limited to that? When we look at that, we also look at what happened in Marion County. Why? Because that is where the case was initially filed, and according to the plaintiff's brief where he cites the case law on forum nonconvenience, Langenhorst's opinion states, referring to Gurney, that a plaintiff's initial choice of forum will prevail unless the inconvenience factors of such forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum. That's his brief. The initial forum that Mr. Decker chose in this case was Marion County. Why is it moved to St. Clair County? This case would have been tried in April. Talk about the public and private factors. Obviously, we have to follow the Fennel case, the Doughty case, the Bland case, and the public and private factors all play toward Marion County, where this case was initially filed, where it was worked up, where it was set for trial, where everything was done until a motion, the transcripts or the motion to dismiss and then refiling in St. Clair County. I've reviewed the court's order that was in the appendix, not looked at the record. I'm just curious, did the court make any specific findings in looking at the different factors on the record? No, Your Honor. Okay. It was typical St. Clair County motion day. The court was full of people, and the order came out shortly thereafter, and it was a one-sentence order, motion denied. No factors at all. Did you, having been familiar with those days, did you get the opportunity to argue your case before the judge? Yes, we did, Your Honor. And there's a transcript of the hearing in the record. And you argued it at the end. The judge said, I'm taking it under advisement. Right. And then a few days later, you got the order. So he didn't make any findings or comments on the record? No. As far as any findings or conclusions to support the denial? No. The other witness. Mr. Harlan, one other question. One of the things raised by the plaintiff is that, you know, the deposition was taken of your clients, and things changed. Things changed. At least the plaintiff intimates that, you know, new information or expanded information was learned as a result of taking the depositions of the individuals that were named, and that as a result of that extra information, if you will, the plaintiff felt a need to disclose more witnesses and more cases. So, in other words, what I'm trying to say is it went from a simple slip and fall to maybe something that was more complicated is the drift that I get from the arguments. Well, let me address the additional, the depositions. I think you're talking about the deposition of Glenn Elliott, who is the person that inspected the locomotive that morning. Found the oil. Found the oil. Right. His inspection report was produced in 2013. But a report doesn't say anything. I mean, it doesn't speak. Let me say or indicate what it says. Found oil, film, and air compressor room floor and applied oil. Right. I know, but the circumstances of all of that and being able to ask whether or not it's your opinion that that's a violation of the locomotive inspection act. None of that occurs with a piece of paper, right? That's correct. Your honor. But I'd ask you to take judicial notice of Mr. Gavin, his experience as an FDL, FDLA lawyer and the locomotive inspection act and the complaint that he was filed initially back in May of 2013, where count two is locomotive inspection act, where the allegation is operating the locomotive out flying when the surface was contaminated with oil and other slippery substances, thereby making the locomotive unsafe. We also produced the photographs, which again are a part of the record that show the oil in the compartment. Now that's another question I had. You said those were taken by Mr. Crawford. The photograph showing the oil was taken by. Go ahead. By Mr. Okay. There were other photographs with the white oil. Right. Taken by Mr. And was Mr. Crawford's name given at that time that he was the one who took the photos. And Mr. Crawford was named in their income by Mr. Okay. Very good. Thank you so much. You'll have some additional time after Mr. Gavin, Mr. Gavin. When you're ready. Good afternoon. Good afternoon. Please. Mr. Excuse me. Your honor. Just as Kate's raised the question of what standards should be applied to this appeal. And Mr. Harlan correctly responded by saying the standard of foreign non convenience. At the hearing on the motion for foreign non convenience judge Lopino. Got to the same point. He directed Mr. Harlan at that hearing. This is reflected in the record. To concentrate on the foreign non convenience factors that are traditionally applied to this case. And clearly did not abuse his discretion because the key witness, the witness that admits the locomotive inspection act violation lives in St. Clair County. The next witness whose name we got from the locomotive shop inspection records. Now, these are the records that the railroad produced to me that showed the history of the locomotive in the shops. Took his name off there. Mr. McCarthy. John McCarthy lives in Madison County. I took his deposition in August about a month later, and he too made admissions that established a locomotive inspection act violation. Mr. Crawford, who was disclosed in our original March 2014 disclosures, lives in St. Clair County. We need to keep our eye on the timing of what happened in this case. Plaintiff's deposition was originally set in January, but because of inclement weather was canceled. It could not be reset until May. In the interim, the case had outpaced the case management order, which required me to disclose witnesses in March, which I did based on what I had. And Justice Stewart, you're correct. I got what names I had from these papers. So the plaintiff's deposition gets taken in May. And as I'm sure the court knows that traditionally defense employees are depositions were taken in the summer. And lo and behold, Mr. Elliott, the inspector of the locomotive, testified that all of the actions that are reflected on the shock locomotive records, the inspections, the corrections and so forth, took place in St. Clair County in Dupont. That was his testimony, and it's in the brief. And so I learned that day, for sure, from that general foreman, of an even stronger connection with St. Clair County. That is, they had inspected and worked on this locomotive in Dupont. Now, the defendant denies that in a subsequent affidavit from others, not from Mr. Elliott, but from others. But even if their subsequent affidavit is correct and Mr. Elliott is incorrect, we still see that there are records in Dupont. And, of course, it's undeniable that the defendant maintains large operations in Dupont and also its yards at the Alton & Southern in East St. Louis. So Judge Loveno had before him the evidence of all these connections with St. Clair County. And it cannot be said that his discretion was abused in denying the motion. A large part of the defendant's brief is focused on the motive for the dismissal of the case for Marion County. And as Mr. Harla noted, the plaintiff has the right to dismiss a case. And I cited a case in our brief that the circumstances or motive for dismissing a case are immaterial. And there's an appellate court opinion on that. So if you keep the timing in focus here, we see that events outstripped the case management order in Marion County. When these two discovery depositions were taken, it became abundantly clear that this case had a very strong connection to St. Clair County. It's undeniable that it does. Mr. Crawford, I think, who took the photographs, I think I said this earlier, lives in St. Louis County. Mr. Rodriguez, whose name appears in one of the documents, lives in Belleville as well. The treating physician practices in Jefferson County. And so the only connection, the only real connection with Marion County is the accident happened there. There was an emergency room visit there. And I believe a family physician was there. And one of the crew members who did not witness the incident resides there. You're right. You're Klein. I'm sorry? You're Klein. Klein. You're right, Your Honor. Correct. That's correct. Mr. Decker does live in Marion County. But there are also other connections spread throughout other counties, including the strong connection with St. Clair County. And the law is clear in the Green case that under these circumstances, Judge Loveno would have abused his discretion had he denied this motion. And so for those reasons, unless the court has additional questions, we request that Judge Loveno's order be affirmed. Thank you. Mr. Holland. The GRE case stands for the proposition that if there's no predominant county, then plaintiff's initial choice is appropriate. The predominant county in this case is Marion County. The plaintiff lives there. The accident happened there. His treating physician is there. And co-workers at the name are either in that county or adjacent to it. Mr. Rodriguez, this is one of the new witnesses in St. Clair County. Plaintiff's brief says he may know something about this. The document was produced in 2013. The manager's report, it says, claims notified Mike Rodriguez. That's the basis for listing him as a witness. And if it was, why wasn't he listed in Marion County? This document was produced in 2013. The other gentleman from the shocking history records is a John Foltz. Again, we've provided the court his affidavit. He says, and Foltz and Mr. Smith are the entries that Mr. Gavin has talked about. These are the people that made the entries in the computer, not Mr. Feltz. And they indicate, Mr. Feltz indicates, as Mr. Smith indicated in his affidavit, that he made the computer entry. An inspection was not done on June 29, 2012, in Dooku, Dooku. And what happened was a mechanic went out and changed the filters in the St. Clair service unit where the engine was. I'm just trying to put two and two together here about what happened. But, I mean, tell me if my understanding is wrong. Those shop entry records, or whatever you call them, were produced. Then Elliot's deposition was taken. Elliot looked at those records, and his interpretation of those in his testimony was that these inspections took place in Dupont. Is that one of them? Yes. Okay. At least one of them anyway. And that's what he testified to, looking at those records. That's what he said they meant. Okay. So then motion for voluntary dismissal is filed. Yes. Then it's refiled in St. Clair County. Correct. You file your motion for an inconvenience, and as part of that, you ask the person who made the entry, did you do this inspection in Dupont? He says, no, I'm out here in Kansas City or whatever. Okay. So that contradicts Elliot's testimony. But the plaintiff doesn't know that after he gets Elliot's deposition. Elliot said it took place in Dupont. So there's a certain amount of just misunderstanding here about what these records mean. Is that right? Not anymore. Well, not now. But, I mean, at the time, Elliot, a Union Pacific employee, said that meant he did this inspection in Dupont. I mean, maybe it's cleared up now. And these inspections, let's be clear, the inspections that were done before and after July 23, 2012, were done by Mr. Decker the week before this incident happened. He has to do a daily inspection of that locomotive. We've produced the card he admitted in his deposition. Those are the inspections that were done shortly before July 23, 2012, and Mr. Elliot's the day afterwards. All this other stuff is changing filters, whether it was in Dupont or not. And, in fact, it was not in Dupont. The records and shop and history records, they're not from Dupont. They're from Omaha. That's where they come from. Somebody submits it to them, and they make a computer entry. Yes. Yeah. Okay. So, the point here is the four nonconvenience factors are the public and private factors. And I submit to the court that the interest in deciding localized controversies locally strongly points to Marion County, where Mr. Decker lives, where this happens, where the predominance of the witnesses are. The unfairness of imposing expenses of trial in the term of jury that belongs in Marion County. And the administrative difficulties with trial guidance. Again, this case would have been over in April of this year. Thank you, Your Honor. Thank you, Mr. Harlan. Okay, this matter will be taken under advisement, and an order will be issued in due course. Thank you, gentlemen.